UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANTE CASTELLI,<br><br>                    Plaintiff,<br><br>          v.<br><br>MAGNACHIP SEMICONDUCTOR CORPORATION, CAMILLO MARTINO, YOUNG-JOON KIM, KYO-HWA CHUNG, MELVIN L. KEATING, ILBOK LEE, GARY TANNER, and NADER TAVAKOLI,<br><br>                    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Dante Castelli ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Magnachip Semiconductor Corporation ("Magnachip" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Magnachip, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger between Magnachip, South Dearborn Limited ("Parent"), and Michigan Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Parent ("Proposed Transaction"). Both Parent and Merger Sub are investment

1

vehicles established by Wise Road Capital LTD ("Wise Road"). Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law.

2. On March 25, 2021, Magnachip executed an Agreement and Plan of Merger with Parent and Merger Sub ("Merger Agreement"), whereby Merger Sub will merge with and into Magnachip, with Magnachip surviving and becoming a wholly-owned subsidiary of Parent.

3. Upon consummation of the Proposed Transaction, each share of the Company's common stock will be converted into the right to receive $29.00 in cash ("Merger Consideration").

4. On April 19, 2021, in order to convince Magnachip's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5. In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Magnachip; (ii) the financial analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("JP Morgan"); and (iii) the process leading up to execution of the Merger Agreement.

6. The Proposed Transaction is expected to close in the second half of 2021, so the special meeting of the Company's shareholders to vote on the Proposed Transaction is imminent ("Shareholder Vote"). Therefore, it is crucial that the material information omitted from the Proxy is disclosed prior to the Shareholder Vote, so Magnachip's shareholders can properly exercise their corporate voting rights.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, unless and until the material information discussed below is disclosed to Magnachip's shareholders sufficiently before the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Magnachip's common stock trades on the New York Stock Exchange ("NYSE"), which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's legal counsel

for the Proposed Transaction, Paul, Weiss, Rifkind, Wharton & Garrison LLP, is located in this District at 1285 Avenue of the Americas, New York, NY 10019.

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Magnachip common stock.

12. Defendant Magnachip is a public company incorporated under the laws of Delaware with principal executive offices located at 1, Allée Scheffer, L-2520, Luxembourg, Grand Duchy of Luxembourg. The Company's common stock trades on the NYSE under the ticker symbol "MX."

13. Defendant Camillo Martino is, and has been at all relevant times, a director of the Company, and Chairman of the Board.

14. Defendant Young-Joon Kim is, and has been at all relevant times, a director of the Company, and Chief Executive Officer ("Defendant Kim").

15. Defendant Kyo-Hwa Chung is, and has been at all relevant times, a director of the Company.

16. Defendant Melvin L. Keating is, and has been at all relevant times, a director of the Company.

17. Defendant Ilbok Lee is, and has been at all relevant times, a director of the Company.

18. Defendant Gary Tanner is, and has been at all relevant times, a director of the Company.

19. Defendant Nader Tavakoli is, and has been at all relevant times, a director of the Company.

4

20. Defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.    Background of Magnachip, Wise Road, and the Proposed Transaction**

21. Magnachip together with its subsidiaries, designs, manufactures, and sells analog and mixed-signal semiconductor platform solutions for communications, Internet of Things, consumer, industrial, and automotive applications. The Company offers display solutions, including source and gate drivers, and timing controllers that cover a range of flat panel displays used in mobile communications, automotives, entertainment devices, notebook PCs, monitors and liquid crystal displays, organic light emitting diodes, and micro light emitting diode (LED) televisions. The Company also provides metal oxide semiconductor field effect transistors, insulated-gate bipolar transistors, AC-DC converters, DC-DC converters, LED drivers, switching regulators, linear regulators, and power management integrated circuits for a range of devices comprising televisions, smartphones, mobile phones, wearable devices, desktop PCs, notebooks, tablet PCs, and other consumer electronics, as well as for various industrial applications consisting of power suppliers, e-bike, photovoltaic inverter, LED lighting, motor drive, and home appliances. It serves consumer, computing, and industrial electronics original equipment manufacturers; original design manufacturers; and electronics manufacturing services companies, as well as subsystem designers. Magnachip sells its products through a direct sales force, as well as through a network of agents and distributors worldwide.

22. Wise Road is a global private equity firm that invests in leading technology companies. The firm focuses on identifying opportunities in enabling technologies for global

urbanization and smart & green life through close cooperation with companies across several main themes, including smart city, intelligent manufacturing, and renewable energies.

23. According to the March 26, 2021, press release announcing the Proposed Transaction:

### Magnachip Enters into Definitive Agreement with Wise Road Capital in a Take Private Transaction Valued at $1.4 Billion

SEOUL, South Korea, March 26, 2021 — Magnachip Semiconductor Corporation ("Magnachip" or the "Company") (NYSE: MX), the South Korean leader in display and power solutions, today announced that it has entered into a definitive agreement (the "Agreement") with South Dearborn Limited, a company incorporated in the Cayman Islands, and Michigan Merger Sub, Inc., a Delaware corporation, which are investment vehicles established by Wise Road Capital LTD and certain of its limited partners ("Wise Road").

Under the terms of the Agreement, Magnachip shareholders will receive $29.00 in cash for each share of Magnachip's common stock they currently hold, representing a premium of approximately 75% to Magnachip's 3-month volume-weighted average share price and approximately a 54% premium to the unaffected closing stock price on March 2, 2021, the last trading day before media reports of third-party interest in acquiring Magnachip. The all-cash transaction has an equity value of approximately $1.4 billion. The transaction is fully backed by equity commitments and not contingent on any financing conditions.

Following the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles, and the Company will remain based in Cheongju, Seoul and Gumi, South Korea. The transaction is expected to be seamless for customers and employees across Magnachip's businesses.

Magnachip's Chief Executive Officer, YJ Kim, said: "This transaction is in the best interests of all of our stakeholders, including shareholders, customers and employees. It will provide an excellent opportunity to accelerate our MX 3.0 growth strategy. Given their deep industry expertise, Wise Road Capital is an ideal partner for Magnachip, and we look forward to working with them as we chart the next phase for our company. We remain grateful to our customers for their trust and to our fellow employees for their unwavering commitment to delivering industry-leading products to customers worldwide."

Wise Road intends to work together with Magnachip's management team to pursue the next step in the Company's growth strategy and transform the Company into a true industry leader in the global display and power markets. Through its additional investment and global network, Wise Road will help

> Magnachip's growth internationally. Wise Road remains absolutely committed to providing world-class products and services to the Company's customers, while creating a stable environment for the company's employees to grow and thrive.
>
> The Board of Directors of Magnachip has unanimously approved the Agreement and recommends that Magnachip shareholders vote in favor of the transaction. Details of the transaction and the Agreement are included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.
>
> The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.
>
> **Advisors**
> J.P. Morgan Securities LLC served as exclusive financial advisor and Paul, Weiss, Rifkind, Wharton & Garrison LLP, Richards, Layton & Finger, PA and Kim & Chang served as legal counsel to Magnachip. BMO Capital Markets Corp. served as exclusive financial advisor and Hogan Lovells US LLP and Lee & Ko served as legal counsel to Wise Road Capital LTD.

(Emphasis in original).

24.     The Merger Consideration represents inadequate compensation for the Company's shareholders. Indeed, on March 4, 2021, prior to execution of the Merger Agreement, Needham and Company, LLC analyst, Ravindra Gil, stated that a sum-of-the-parts analysis indicated that Magnachip may be worth $41-$46 per share, which is much higher than the Merger Consideration. The analyst goes on to add that the Company's stock may be worth significantly more, as Magnachip moves its products portfolio to a greater percentage of Power IC revenue.

25.     Therefore, it is imperative that the Company's shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, necessary for them to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Transaction.

**II.     The Proxy Omits Material Information**

26.     Defendants filed a materially incomplete and misleading Proxy with the SEC,

despite the Individual Defendants being obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders, to ensure that it did not contain any material misrepresentations or omissions. Thus, the Proxy should be amended prior to the Shareholder Vote, so the Company's shareholders can make an informed voting decision in connection with the Proposed Transaction.

27.     First, the Proxy fails to disclose material information regarding the financial projections for Magnachip.

28.     Despite references to Net Income, the Proxy fails to disclose Net Income projections for the Company. By disclosing certain projections and withholding the material Net Income projections, Defendants render the projections on page 68 of the Proxy materially incomplete, because it provides a misleading valuation picture of Magnachip. Simply put, Net Income projections are irreplaceable when it comes to fully, fairly, and accurately understanding a company's projections and value.

29.     In addition, the Proxy fails to disclose the figures underlying the inputs used by Magnachips's management to calculate Adjusted EBITDA and Unlevered Free Cash Flow. The Proxy discloses that Adjusted EBITDA was calculated with the following inputs: (i) EBITDA – defined as income from continuing operations before interest expense, net, income tax expense (benefit) and depreciation and amortization; (ii) equity-based compensation expense; (iii) foreign currency loss (gain), net; and (iv) derivative valuation loss (gain), net. Similarly, Unlevered Free Cash Flow was calculated using: (i) EBIT – adjusted to exclude stock-based compensation expense, adding depreciation and amortization, and subtracting; (ii) taxes; (iii) capital expenditures; (iv) increases in net working capital; (v) stock-based compensation expense; and (vi) other one-time charges. Therefore, without disclosure of the figures underlying these inputs,

the Company's shareholders will be unable to understand how Magnachip's management derived the Company's projections.

30. Unlike poker where a player must conceal his unexposed cards, the object of a proxy statement is to put all of one's cards on the table face-up. In this case, only some of the cards were exposed—the others were concealed. If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases). Accordingly, Defendants must disclose the Net Income projections for Magnachip, and the figures underlying the inputs used to calculate Adjusted EBITDA and Unlevered Free Cash Flow.

31. Second, the Proxy omits material information regarding JP Morgan's financial analyses for the Proposed Transaction.

32. With respect to the *Public Trading Multiples* Analysis, the Proxy omits the assumptions underlying JP Morgan's selection of a CY2021E FV/EBITDA reference range for the Company of 6.0x to 13.0x. In addition, the Proxy does not disclose the mean and median multiples observed by JP Morgan in the analysis.

33. Further, for JP Morgan's *Discounted Cash Flow Analysis* of the Company, the Proxy fails to disclose the following information: (i) the inputs and assumptions underlying application of a perpetual growth rate ranging from 2.0% to 3.0%; and (ii) the number of fully diluted shares of Magnachip's common stock outstanding.

34. These key inputs are material to the Company's shareholders, and their omission renders the summary of JP Morgan's *Discounted Cash Flow Analysis* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> *There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added). Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of JP Morgan's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Magnachip, or were the result of an unreasonable judgment by JP Morgan, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

35. As for the *Selected Transaction Multiples Analysis*, the Proxy does not disclose the mean and median multiples observed. Further, the Proxy omits the inputs and assumptions underlying JP Morgan's selection of a FV/NTM EBITDA reference range for the Company of 9.5x to 14.0x.

36. Finally, for the *Analyst Price Targets for the Company*, the Proxy omits the names of the equity research analysts and the respective price targets observed, as well as the inputs and assumptions underlying application of a discount rate of 10.75%.

37. Third, the Proxy fails to disclose certain material information pertaining to the process leading up to execution of the Merger Agreement.

38. To start, Magnachip's management will be retaining their roles in the post-transaction company, yet the Proxy entirely omits this. Indeed, the Proxy does not disclose any information surrounding the post-transaction employment discussions that may have taken place with Wise Road and the timing and nature of such discussions. The Company's shareholders are entitled to this information, so they can evaluate this potential conflict of interest for themselves.

39. Next, the Proxy discloses that on November 30, 2020, Party D emailed Defendant Kim an increased offer price of $23.50 per share and indicated that it would need to conduct its due diligence, including review of the Company's business information. On January 21, 2021, Party D again reiterated that offer price in a non-binding letter sent to the Board. In fact, Party D's initial offer of $23.50 was one of the higher offer prices received by the Company, yet the Company chose not to engage in serious negotiations with Party D and instead predominately focused on negotiations with Party A. Thus, Magnachip's shareholders are entitled to know why Magnachip did not seriously engage in negotiations with Party D.

40. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his

shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45. Defendants have issued the Proxy with the intention of soliciting the Company's public common stockholders support for the Proposed Transaction. Each of the Individual

Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for Magnachip; (ii) the financial analyses performed by JP Morgan; and (iii) the process leading up to execution of the Merger Agreement.

46. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that JP Morgan reviewed and discussed its financial analyses with the Individual Defendants, and further states that the Individual Defendants considered the financial analyses provided by JP Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the Company's projections and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above

has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review JP Morgan's analyses in connection with their receipt of the fairness opinion, question JP Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, and preparation and review of the Company's financial projections.

49. Magnachip is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of Magnachip within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Magnachip, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Fiduciary Duty of Candor/Disclosure)**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

61. As alleged herein, the Individual Defendants breached their duty of

candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

62. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

//

//

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 28, 2021                      **MONTEVERDE & ASSOCIATES PC**

/s/ Juan E. Monteverde
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*